COLLINS *v.* LORD'S FURNITURE & APPLIANCE COMPANY.

WORKMEN'S COMPENSATION—FINDING OF COMMISSION—ACCIDENT—
HERNIA—EVIDENCE.

> Finding of workmen's compensation commission that plaintiff
> truck driver had sustained an accidental injury that was com-
> pensable while helping to move a heavy hide-a-bed up a stairway,
> *held,* unsupported by competent testimony, where there was
> an absence of proof of an accident, any sudden additional
> weight, sudden strain or slipping, any unusual or fortuitous
> circumstance or event, or of a hernia clearly recent in origin
> or of an aggravation of an existing umbilical hernia.

Appeal from Workmen's Compensation Commis-
sion. Submitted January 6, 1954. (Docket No. 18,
Calendar No. 45,636.) Decided April 5, 1954.

Paul Collins presented his claim for compensation
from Lord's Furniture & Appliance Company and
State Accident Fund for injuries based on hernia.
Award to plaintiff. Defendants appeal. Reversed.

*George Joseph,* for plaintiff.

*Harry F. Briggs* (*Peter Munroe,* of counsel), for
defendants.

BOYLES, J. The workmen's compensation commis-
sion granted plaintiff an award of compensation for
a claimed personal injury. On leave granted, the
defendant employer and its insurer appeal.

---

REFERENCES FOR POINTS IN HEADNOTE
58 Am Jur, Workmen's Compensation §§ 255, 481, 532.

Plaintiff's application for the award claimed that the injury occurred in the following manner:

"Moving hide-a-bed up stairway    *    *    *    and ruptured self on right side.
"Nature of disability—Hernia on right side."

The defendants, for reversal and setting aside the award, claim that the plaintiff did not suffer a compensable injury.

It is conceded that the plaintiff was an employee of the defendant company, his duties being to drive a truck and deliver furniture. Plaintiff testified that while carrying a hide-a-bed weighing about 400 pounds up a stairway, with the aid of another employee, the following happened:

"We started up and we got up almost to the top of the steps. The steps are winding and we had to lift it over and I got this pain in my stomach when we lifted it over there, over the bannister.

"*Q.* Can you describe that pain?

"*A.* It was—at first, I can't just remember how long, but I remember it paining and hurting for about a half hour and then it quit hurting, and then later in the afternoon—I kept right on that work, and it started back again, oh, around 4 o'clock."

He reported the pain to his superior, continued to work for several days, felt a pain "off and on," and about a week later was sent to a doctor, who operated on the plaintiff for an umbilical hernia, and removed his appendix. The doctor testified that plaintiff said nothing about an injury but that he had "distress in his stomach." The doctor testified:

"*Q.* What was the condition of his appendix at that time?

"*A.* What we call a low grade, chronic type appendix.    *    *    *

"*Q.* Would you attribute his difficulties to the hernia or to the appendix you spoke of, or to both?

"*A.* I would be more inclined to think that this distress he was complaining about and so on, was, I believe, more due to the appendix than to the hernia, but, after all, it is only a matter of 2 or 3 inches difference in location and it might have been both of them. It is just difficult to say which was aching the most; was the reason for the distress. I am more inclined to think the appendix rather than the hernia.

"*Q.* And could his condition be brought on due to the fact that he was carrying an unusual load?

"*A.* I can't see how it could, no.

"*Q.* Do you know what brought on this particular condition, Doctor, at the time?

"*A.* You mean his distress?

"*Q.* Yes.

"*A.* Bring on the distress? Again I would say I would expect more a little flare-up of the liver and chronic appendicitis.  *  *  *

"*Q.* The hernia you discovered was an umbilical hernia, was it not?

"*A.* Right.

"*Q.* Isn't it true that hernias of this nature are frequently present from the time of birth?

"*A.* Most usually.  *  *  *

"*Q.* Doctor, we are a little handicapped here by the fact the plaintiff has not yet testified, but with his work as truck driver he apparently does a lot of lifting of furniture in and out of buildings. Could that type of work, heavy lifting, carrying davenports and what not, in and out of buildings, and on and off the truck, could that type of work produce this umbilical hernia you testified to?

"*A.* I do not believe so.

"*Q.* You don't believe an umbilical hernia is caused by stress and strain such as an inguinal hernia is?

"*A.* No.

"*Q.* In other words, you find no connection between that type of work and an old chronic appendix?

"*A.* An umbilical hernia,—I might put it this way, an umbilical hernia is present which can be aggra-

vated by heavy lifting and so on. Just using what you call a hypothetical case, it can be aggravated by heavy lifting. * * * Umbilical hernias seldom cause distress. They are not like the inguinal hernia, * * * Now, I will say this, a good many have an umbilical hernia, too small for one to see. And, answering your question, with this terrific lifting and so on, could he get distress and sickness, yes.

"*Q.* Purely on the aggravation basis?

"*A.* On the aggravation basis.

"*Q.* Exertion basis brought on the symptoms?

"*A.* Could be.

"*Q.* That is what those things could have done?

"*A.* Could be."

There was further testimony that plaintiff had no abdominal pains before he experienced the pain while lifting the bed. The president of the defendant company testified—without objection—that plaintiff, upon his return from delivering the bed, said that he had hurt himself:

"*Q.* Did he say how he hurt himself and where he hurt himself?

"*A.* In going up the stairs they had a bad turn to make, and I don't know whether you know what a Simmons hide-a-bed is. It is the heaviest item of this kind. * * * At that time they were very heavy and hard to handle, and in order to get it up they had to lift it over a bannister,—they couldn't make the turn, and had to lift it over the bannister and he said at that time he hurt himself and felt something ache and he had another pain when he got back to the store."

The commission found there had been an accidental injury, and that it was compensable. There is no competent testimony to support the finding. In the record the applicable testimony as to how the injury occurred is brief and has been quoted substantially in full. There is no proof of any accident,

any sudden additional weight, sudden strain or slipping, only plaintiff's testimony that he was lifting and felt a pain. There is an absence of any testimony of any unusual or fortuitous circumstance or event, no proof of a hernia clearly recent in origin, or of an aggravation of an existing umbilical hernia. Under our previous decisions, plaintiff was not entitled to an award of compensation. *Kasarewski* v. *Hupp Motor Car Corporation*, 315 Mich 225; *Arnold* v. *Ogle Construction Co.*, 333 Mich 652; *Ash* v. *Great Lakes Greyhound Lines*, 337 Mich 362.

Remanded for entry of an order denying the award.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, DETHMERS, and KELLY, JJ., concurred.